IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CHARLES GABRIEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18-cv-354 |
| | ) | |
| FORSYTH COUNTY CLERK OF COURT | ) | |
| MS. SUSAN FRYE OFFICE OF THE | ) | |
| 21ST JUDICIAL DISTRICT COURT; | ) | |
| and her deputy assistant | ) | |
| HOLLEY ROBINSON; HOLLEY | ) | |
| ROBINSON, INDIVIDUALLY; | ) | |
| STATEBRIDGE COMPANY, LLC; | ) | |
| BROUGHAM REO OWNER, LP; JOHN | ) | |
| A. MANDULAK, HUTCHENS LAW | ) | |
| FIRM; JOHN A. MANDULAK, | ) | |
| INDIVIDUALLY; JOHN A. | ) | |
| MANDULAK, TRUSTEE; and | ) | |
| SUBSTITUTE TRUSTEE SERVICES, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, Chief District Judge.

This action arises out of a home foreclosure proceeding in the North Carolina state court system. Before the court are motions to dismiss from all Defendants: Statebridge Company, LLC and Brougham REO Owner, LP (together, the "Lender Defendants") (Doc. 4); John A. Mandulak, the Hutchens Law Firm, and Substitute Trustee Services, Inc. (together, the "Trustee Defendants") (Doc. 6); and Susan Frye and Holley Robinson (together, the "State Defendants") (Doc. 27). In addition, Plaintiff Charles Gabriel

has moved to amend the complaint (Doc. 18) and to extend time to serve the State Defendants (Doc. 31). For the reasons set forth below, the Lender and Trustee Defendants' motions to dismiss will be granted. Gabriel's motion for extension of time to serve the State Defendants will also be granted, and the State Defendants' motion to dismiss will be denied without prejudice. Finally, Gabriel's motion to amend will be denied.

## I. BACKGROUND

The allegations of the complaint, along with the contents of documents of which the court takes judicial notice,[1] show the following:

---

[1] The court may consider documents outside the pleadings without converting a motion to dismiss into a motion for summary judgment if those documents are "integral to and explicitly relied on in the complaint" and their authenticity is unchallenged. Copeland v. Bieber, 789 F.3d 484, 490 (4th Cir. 2015) (quoting Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999)). Pursuant to Federal Rule of Evidence 201, the court may also take judicial notice of facts contained in documents that are part of the public record, so long as those facts are "not subject to reasonable dispute." Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 607 (4th Cir. 2015); see also Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) (noting that the most common subject of judicial notice is facts contained in court records). Both Gabriel and the Lender Defendants have attached documents to their briefs. As to the Lender Defendants' attachments, Docs. 5-1, 5-3, 5-4, 5-5, 5-6, 5-7, 5-8, 5-9, 5-10, 5-11, 5-12 are clearly public records and may be considered on that basis. Whether or not Doc. 5-2 (the promissory note) is a public record, Gabriel relies on that note in his complaint and does not dispute its authenticity — it is therefore considered on that basis. As to Gabriel's attachments: Docs. 15-1, 15-2, and 15-3 do not bear on the court's motion to dismiss analysis and therefore are not considered. Docs. 19-1, 19-2, 19-3, and 19-4 are duplicative of the Lender Defendants' attachments and thus need not be considered. Doc. 19-5 appears to be a summary of a state statute governing foreclosure; since any claim that the foreclosure hearing was not in compliance with the state statute is precluded by the Rooker-Feldman doctrine, as discussed below, the court need not consider Doc. 19-5.

On July 21, 2016, Substitute Trustee Services, Inc. filed a "Notice of Hearing Prior to Foreclosure of Deed of Trust" in the Forsyth County Superior Court, scheduled for August 31, 2016. (Doc. 1 at 4; Doc. 5-1.) The notice was served on Gabriel as well as on Michelle Barber, the sole maker of the promissory note in default. (Doc. 1 at 5; Doc. 5-2.) The related deed of trust, meanwhile, had been executed by both Barber and Gabriel's father. (Doc. 5-3.) Gabriel alleges that both Barber and his father "transferred [their] entire interest" in the property to him at some time in or after 2008. (Doc. 1 at 4.) Nevertheless, when Gabriel appeared at the Forsyth County courthouse on August 31, 2016, he was denied entry into the hearing[2] by Holley Robinson, deputy to Clerk of Court Susan Frye, on the ground that Gabriel's name did not appear on the promissory note or deed of trust. (Id. at 5-6.)

Present at the hearing was attorney John A. Mandulak, of the Hutchens Law Firm, representing Substitute Trustee Services, Inc., which was the substitute trustee. (Doc. 1 at 5-7; Doc. 5-1.) Statebridge Company, LLC appears to have been the loan servicer. (Doc. 1 at 4-5.) It is unclear what role, if any, Brougham REO Owner, LP played in the foreclosure proceedings.

The hearing proceeded without Gabriel and resulted in an order

---

[2] The hearing was allegedly held in Robinson's office. (Doc. 1 at 6.)

permitting foreclosure. (Doc. 5-7.) Gabriel and Barber appealed the order on September 12, 2016, and the appeal bond was set at $5,526.07. (Doc. 5-8); see also N.C. Gen. Stat. § 45-21.16(d1) ("If an appeal is taken from the clerk's findings, the appealing party shall post a bond with sufficient surety as the clerk deems adequate to protect the opposing party from any probable loss by reason of appeal; and upon posting of the bond the clerk shall stay the foreclosure pending appeal."). However, because neither Gabriel nor Barber posted the bond (Doc. 5-11 at 3), the foreclosure sale was not stayed, and the property was sold on September 21, 2016 (Doc. 5-9). Gabriel and Barber's appeal was therefore dismissed as moot. (Doc. 5-11.)

On April 30, 2018, Gabriel filed the present action. (Doc. 1.) Construed liberally, the complaint claims deprivations of his constitutional due process rights and violation of the state statute governing foreclosure on the part of the State Defendants,[3] as well as violation of U.S. Department of Housing and Urban Development regulations ("HUD regulations") and Consumer Financial Protection Bureau regulations ("CFPB regulations") on the part of the Lender Defendants. (Id. at 7-9.) The complaint further appears to make claims against all (or, at least, unspecified) Defendants based on fraud, unfair and deceptive trade practices,

---

[3] Gabriel appears to name Frye in her official capacity only. He names Robinson in both her official and personal capacities.

defamation, mental anguish, embarrassment, and intentional infliction of emotional distress. (Id. at 6–8, 10.) The complaint was followed by motions to dismiss by the Lender Defendants (Doc. 4), the Trustee Defendants (Doc. 6), and the State Defendants (Doc. 27). Gabriel filed a response to both the Lender and Trustee Defendants' motions to dismiss (Doc. 15), in which he construes the complaint as making out a conspiracy claim against Mandulak and Robinson and further references federal claims through 42 U.S.C. § 1983 against all Defendants. (Id. at 4–5.) Gabriel also filed a response to the State Defendants' motion to dismiss (Doc. 30), and — after the time for filing a response had elapsed — filed a supplement entitled "Plaintiff's Amended Memorandum in Support of Plaintiff's Opposition to Forsyh [sic] County Defendants Motion to Dismiss" (Doc. 34).[4] On October 3, 2018, Gabriel filed a motion

---

[4] The court will not consider Gabriel's supplement (Doc. 34) in resolving the State Defendants' motion to dismiss. To the extent Gabriel meant the supplement to be a surreply, the court's local rules do not authorize such a filing. See Local Rule 7.3. While courts sometimes allow surreplies "when fairness dictates based on new arguments raised in the previous reply," DiPaulo v. Potter, 733 F. Supp. 2d 666, 670 (M.D.N.C. 2010), here the State Defendants did not even file a reply, let alone a reply containing new arguments. To the extent Gabriel meant the supplement as an amended response, he is required to show excusable neglect under Federal Rule of Civil Procedure 6(b)(1)(B), since his deadline for filing a response had already passed. See Fed. R. Civ. P. 6(b)(1)(B) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . after the time has expired if the party failed to act because of excusable neglect."); Campbell v. Verizon Va., Inc., 812 F. Supp. 2d 748, 750 (E.D. Va. 2011) ("The Court will deny Plaintiff's Motion for Leave [to amend his response] because the deadline for submitting his opposition to the motion has expired and the Plaintiff has not established that the delay results from excusable neglect."). Gabriel does not give any reason

to amend the complaint (Doc. 18), which is opposed by all Defendants (Doc. 23; Doc. 28 at 8-9). On November 29, 2018, he moved to extend the time within which to serve the State Defendants. (Doc. 31.) No Defendant filed a response within the deadline set by the court.[5] All motions are now ready for decision.

## II. ANALYSIS

### A. Defendants' Motions to Dismiss

#### 1. Standards

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556).

"When reviewing a pro se complaint, federal courts should examine carefully the plaintiff's factual allegations, no matter

_____

that an untimely amendment should be allowed, and the court cannot discern one.

[5] The Lender and Trustee Defendants filed a notice of intent not to respond. (Doc. 33.)

how inartfully pleaded, to determine whether they could provide a basis for relief. In addition, in order to determine whether the claim of a pro se plaintiff can withstand a motion to dismiss, it is appropriate to look beyond the face of the complaint to allegations made in any additional materials filed by the plaintiff." <u>Armstrong v. Rolm A. Siemens Co.</u>, No. 97-12222, 1997 WL 705376, at *1 (4th Cir. Nov. 13, 1997) (citations omitted) (unpublished table decision). Nevertheless, the liberal construction of a pro se plaintiff's pleading does not require the court to ignore clear defects in pleading, <u>Bustos v. Chamberlain</u>, No. 3:09-1760-HMH-JRM, 2009 WL 2782238, at *2 (D.S.C. Aug. 27, 2009), or to "conjure up questions never squarely presented in the complaint," <u>Brice v. Jenkins</u>, 489 F. Supp. 2d 538, 541 (E.D. Va. 2007) (internal quotation marks and citation omitted). Nor does it require that the court become an advocate for the unrepresented party. <u>Weller v. Dep't of Soc. Servs.</u>, 901 F.2d 387, 391 (4th Cir. 1990).

### 2. Lender Defendants' Motion to Dismiss

Construed liberally, Gabriel's materials can be read to make out the following claims against the Lender Defendants: violation of HUD and CFPB regulations, fraud, unfair and deceptive trade practices, defamation, mental anguish, embarrassment, and

intentional infliction of emotional distress.[6]

To the extent Gabriel's claims of regulatory violations and fraud challenge the propriety of the foreclosure, see (Doc. 1 at 6-7 (alleging that "[n]ewly discovered documents suggest the Attorney representing the Lender was fully aware that the property which he was attempting to foreclose had been encumbered" and that the foreclosure hearing should have been therefore "set . . . aside")), this court lacks jurisdiction to consider them under the Rooker-Feldman doctrine,[7] which "prohibits the United States District Courts, with the exception of habeas corpus actions, from 'sit[ting] in direct review of state court decisions.'" Jordahl v. Democratic Party of Va., 122 F.3d 192, 199 (4th Cir. 1997) (alteration in original) (quoting D.C. Court of Appeals v. Feldman, 460 U.S. 462, 482 n.16 (1983)). "The doctrine extends not only to

---

[6] In his response brief, Gabriel also alleges in passing that his inability to be heard at the foreclosure hearing was "in violation of 42 U.S.C. § 1983." (Doc. 15 at 5.) Of course, § 1983 merely provides a remedy for the deprivation of other "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983; see Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617 (1979) ("[I]t remains true that one cannot go into court and claim a 'violation of § 1983' — for § 1983 by itself does not protect anyone against anything."). At any rate, any claim brought under § 1983 against the Lender or Trustee Defendants necessarily fails because these Defendants are neither state actors nor the equivalent thereof. See DeBauche v. Trani, 191 F.3d 499, 506 (4th Cir. 1999) ("To implicate 42 U.S.C. § 1983, conduct must be fairly attributable to the State. The person charged must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions." (internal quotation marks and citations omitted)).

[7] The doctrine derives its name from Rooker v. Fid. Trust Co., 263 U.S. 413 (1923), and D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983).

. . . claims presented or adjudicated by the state courts but also to claims that are 'inextricably intertwined' with a state court judgment." Id. (quoting Feldman, 460 U.S. at 486-87). Claims are "inextricably intertwined" with a state court ruling where, "in order to grant the federal plaintiff the relief sought, the federal court must determine that the [state] court judgment was erroneously entered or must take action that would render the judgment ineffectual." Id. at 202 (alteration in original).

As this court has previously noted, "Rooker-Feldman applies to foreclosure proceedings before the Clerk of Superior Court and appeals of those proceedings in State court." Broadnax v. BSI Fin. Servs. Inc., No. 1:17cv42, 2017 WL 4220456, at *3 (M.D.N.C. Sept. 21, 2017); see also N.C. Gen. Stat. § 45-21.16(d1) ("The act of the clerk in so finding or refusing to so find [that foreclosure is proper] is a judicial act . . . ."). Since the Forsyth County Superior Court Clerk approved the foreclosure at issue here, this court lacks subject matter jurisdiction over any claim by Gabriel seeking to disturb that foreclosure. See Broadnax, 2017 WL 4220456, at *3; Brumby v. Deutsche Bank Nat'l Trust Co., No. 1:09CV144, 2010 WL 617368, at *3-5 (M.D.N.C. Feb. 17, 2010), adopted by 2010 WL 3219353 (M.D.N.C. Aug. 13, 2010). Any remedy available to Gabriel for defects in the foreclosure proceedings is available through the state court system, not through the filing

of protests in federal court.[8]  Gabriel's claims attacking the propriety of the foreclosure, and any other claims on which Gabriel bases his prayer for "immediate return to the premises" (Doc. 1 at 10), must therefore be dismissed.

In his response brief, in an attempt to avoid the application of Rooker-Feldman, Gabriel makes several conclusory allegations of "extrinsic fraud" against all Defendants.  (Doc. 15 at 2, 4); see Kougasian v. TMSL, Inc., 359 F.3d 1136, 1141 (9th Cir. 2004) ("Rooker-Feldman . . . does not bar subject matter jurisdiction when a federal plaintiff alleges a cause of action for extrinsic fraud on a state court.").  To the extent Gabriel's scattered fraud accusations actually implicate extrinsic fraud, as opposed to fraud "at the hands of the [state] court," Jordahl, 122 F.3d at 203 (quoting Homola v. McNamara, 59 F.3d 647, 650 (9th Cir. 1995)), these accusations fail to satisfy the heightened pleading standard for fraud claims under Federal Rule of Civil Procedure 9(b).  See

---

[8] Similarly, although Gabriel expresses his frustration that the Lender Defendants "continue[d]" in their "shenanigans" by placing the property at issue for sale without waiting for the resolution of Gabriel's federal claims against them (Doc. 15 at 4), his remedy for staying the foreclosure was to post the bond set by the Forsyth County Superior Court.  See (Doc. 5-8 at 1-2); see also N.C. Gen. Stat. § 45-21.16(d1) (directing the Clerk to stay foreclosure pending direct appeal if the appealing party posts bond).  Gabriel declined to do so.  See (Doc. 5-11 at 3 ("Respondents failed to pay the bond to stay the sale.")).  Even were Rooker-Feldman not to apply to the foreclosure sale, the court can discern no possible claim against the Lender Defendants based upon the fact that they promptly conducted the foreclosure sale authorized by the Forsyth County Clerk.

Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

In North Carolina, "[t]he essential elements of actionable fraud are: '(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.'" Becker v. Graber Builders, Inc., 561 S.E.2d 905, 910 (N.C. Ct. App. 2002) (second alteration in original) (quoting Ragsdale v. Kennedy, 209 S.E.2d 494, 500 (N.C. 1974)). As to court proceedings, fraud is "extrinsic" when it "deprives the unsuccessful party of an opportunity to present his case to the court."[9] Stokley v. Stokley, 227 S.E.2d 131, 134 (N.C. Ct. App. 1976). In the complaint, Gabriel alleges that the Lender (and/or Trustee) Defendants knew the property was "encumbered . . . which prevented the Plaintiff in this action from getting refinanced" and that it was fraudulent for the Lender (and/or Trustee) Defendants not to "share that information with the clerk" so that the foreclosure hearing could be "set . . . aside."[10] (Doc.

---

[9] Extrinsic fraud "prevents a court from making a judgment on the merits of a case," whereas intrinsic fraud involves "matters that are involved in the determination of a cause on its merits." Wilson v. SunTrust Bank, 809 S.E.2d 286, 293 (N.C. Ct. App. 2017) (quoting Hooks v. Eckman, 587 S.E.2d 352, 354 (N.C. Ct. App. 2003)).

[10] Although Gabriel refers to "the Attorney representing the Lender" in the relevant passage, the surrounding text (Doc. 1 at 6-7) shows that he may be referring to Mandulak, who was actually the attorney for the

11

1 at 6–7.)  But Gabriel does not explain how any alleged encumbrance was "a material fact," allege with particularity how the Lender Defendants intended to deceive anyone by not disclosing the alleged encumbrance, or explain how any nondisclosure contributed to Robinson's decision not to admit Gabriel into the foreclosure hearing.  Gabriel's response brief appears to link his fraud claim to the Lender Defendants' alleged violation of the CFPB regulations, but — even assuming the Lender Defendants did violate the CFPB regulations — this does not in itself constitute actionable fraud.  Thus, to the extent Gabriel's extrinsic fraud claims could survive Rooker-Feldman, they will nevertheless be dismissed under Rule 9(b).  See Walker v. Rushmore Loan Mgmt. Servs., LLC, No. 3:15-CV-607-RJC-DCK, 2016 WL 3746577, at *4 (W.D.N.C. June 16, 2016) ("Plaintiffs seek an exception to the Rooker-Feldman doctrine based on claims of extrinsic fraud. . . . However, Plaintiffs fail to allege . . . facts showing Defendants perpetrated an extrinsic fraud on the state court in the foreclosure proceeding."), adopted by Walker v. SGB Corp., 2016 WL 3741873 (W.D.N.C. July 11, 2016).

To the extent Gabriel's claims of regulatory violations are

---

substitute trustee (Doc. 5-1 at 3; Doc. 11 at 2).  Gabriel also recognizes elsewhere in the complaint that Mandulak represented the substitute trustee.  (Doc. 1 at 2, 6.)  As such, Mandulak was legally precluded from advocating for the Lender Defendants.  See N.C. Gen. Stat. § 45-10(a).  At the end of the day, it is immaterial which party or parties Gabriel meant to bring his extrinsic fraud claim against, as his claim fails to meet Rule 9(b)'s heightened pleading standard in any case.

instead intended to be freestanding claims for damages, such claims would survive Rooker-Feldman but fail for lack of a cause of action. As to Gabriel's claim based on the Lender Defendants' violation of HUD regulations — specifically 24 C.F.R. § 203.600, requiring mortgagees to adapt "[c]ollection techniques . . . to individual differences in mortgagors and take account of the circumstances peculiar to each mortgagor" — it is clear that "the HUD Regulations do not, on their own, establish a private cause of action." Christenson v. Citimortgage, Inc., No. 12-cv-02600-CMA-KLM, 2013 WL 5291947, at *7 (D. Colo. Sept. 18, 2013). "[A]lthough some courts have determined that the HUD Regulations become enforceable by a private cause of action if they are incorporated into a mortgagor's loan documents, those courts represent the minority position." Id.; see also id. (collecting cases). Even if the court were to agree that violations of HUD regulations may be actionable through a breach of contract claim based on the incorporation of HUD regulations into loan documents, see In re Rutledge, 510 B.R. 491, 501–02 (Bankr. M.D.N.C. 2014), and even if the court found such incorporation in the loan documents at issue here, any such contract claim on Gabriel's part would necessarily fail because he is not a party to any of the relevant loan documents.

The CFPB regulations, 12 C.F.R. §§ 1026 et seq., under which Gabriel appears to claim he is a "successor in interest," similarly

13

do not provide potential successors with a private cause of action for violations.[11]  See Amendments to the 2013 Mortgage Rules, 81 Fed. Reg. 72160, 72175 (Oct. 19, 2016) ("Despite the urging of consumer advocacy groups, the final rule does not provide potential successors in interest a private right of action . . . .  The Bureau and other Federal and State agencies will review servicers' compliance with respect to potential successors in interest through the agencies' supervision and enforcement authority and through complaint monitoring.").  Even assuming that Gabriel qualifies as a successor in interest under the CFPB regulations, then, any claim based on the Lender Defendants' alleged violation of those regulations must fail.

Gabriel's next claim is for unfair and deceptive trade practices under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. §§ 75-1.1 et seq.  As the Lender and Trustee Defendants point out in their response brief, the general provisions of the UDTPA do not normally apply to alleged unfair or deceptive practices "in the specific context of debt collection," since in that context the North Carolina Debt Collection Act ("DCA"), N.C. Gen. Stat. § 75-50 et seq., "provides a claimant's exclusive remedy."  DIRECTV, Inc. v. Cephas, 294 F.

_____

[11] To the extent Gabriel meant his discussion of the CFPB regulations to support a cause of action for fraud, that claim fails for the reasons discussed previously.

Supp. 2d 760, 765 (M.D.N.C. 2003); see N.C. Gen. Stat. § 75-56 ("The specific and general provisions of [the DCA] shall exclusively constitute the unfair or deceptive acts or practices proscribed by [the UDTPA] in the area of commerce regulated by [the DCA]."). Claims based on mortgages and foreclosure are normally treated as "in the area of commerce regulated by [the DCA]," that is, the context of debt collection. See, e.g., Cole v. Wells Fargo Bank, N.A., 1:15-cv-00039-MR, 2016 WL 737943, at *10 (W.D.N.C. Feb. 23, 2016). But in order to state a DCA claim, "a plaintiff must allege the following three threshold requirements: (1) that the plaintiff is a consumer who incurred an obligation; (2) that the obligation incurred is debt; and (3) that the party attempting to collect the obligation is a debt collector." Vecchione v. Prof'l Recovery Consultants, Inc., No. 1:13CV584, 2014 WL 6972397, at *5 (M.D.N.C. Dec. 9, 2014). Gabriel has not alleged that he incurred any obligation relevant to the mortgage; in fact, he specifically notes his frustration at the fact that the Lender Defendants declined to allow him to "become [an] obligor" under the loan. (Doc. 1 at 8.)

Even if the court found the UDTPA, rather than the DCA, applicable to this action, Gabriel's complaint fails to plausibly allege a claim because the allegations relevant to such a claim — as best as the court can tell, since Gabriel simply lists the

elements of a UDTPA claim[12] without mentioning which facts satisfy them (Doc. 1 at 10) — are alternately implausibly vague (see id. at 4 ("The Plaintiff[] in this motion has been injured, as a result [of] the Defendants['] deceptive actions . . . .")) and insufficiently "[e]gregious or aggravating," Becker v. Graber Builders, Inc., 561 S.E.2d 905, 910 (N.C. Ct. App. 2002) ("[A] mere breach of contract does not constitute an unfair or deceptive act."); see Joy v. MERSCORP, Inc., 935 F. Supp. 2d 848, 863-64 (E.D.N.C. 2013) (finding that "invalid, unauthorized or otherwise defective" lender documents used in support of foreclosure did not amount to egregious or aggravating conduct sufficient to state a claim under the UDTPA). As a result, any UDTPA or DCA claim in the complaint must be dismissed.

This brings the court to Gabriel's common-law tort claims for defamation, mental anguish, embarrassment, and intentional infliction of emotional distress. (Doc. 1 at 10.) In North Carolina, "mental anguish" is just another name for negligent infliction of emotional distress. See Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 395 S.E.2d 85, 89 (N.C. 1990) (noting that negligent infliction of emotional distress is "often called 'mental anguish' or 'mental distress'"). There does not appear to

---

[12] "To state a claim under the UDTPA, [the plaintiff] must show: (1) [the defendant] committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) [the plaintiff] was injured by that act or practice." Cephas, 294 F. Supp. 2d at 765.

be a cause of action for "embarrassment" under North Carolina law — at least as separate from claims of negligent or intentional infliction of emotional distress.  Cf. Dixon v. Stuart, 354 S.E.2d 757 (N.C. Ct. App. 1987) (treating a plaintiff's claims for the "suffering of humiliation and embarrassment" as part of the tort of intentional infliction of emotional distress).  In order to establish either type of emotional distress claim, Gabriel would have to plausibly allege — inter alia — that he suffered "severe emotional distress . . . which is: 'any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so.'"  Piro v. McKeever, 782 S.E.2d 367, 371 (N.C. Ct. App. 2016) (emphasis added) (quoting Holloway v. Wachovia Bank & Trust Co., 452 S.E.2d 233, 243 (N.C. 1994)); see also id. (noting that the "severe emotional distress required" to prevail on intentional and negligent infliction of emotional distress claims "is the same" (quoting Holloway, 452 S.E.2d at 243)).  Here, Gabriel has not alleged that he suffered any emotional distress, let alone the "severe" distress required under North Carolina law.  Similarly, although North Carolina's tort of defamation requires — inter alia — that a defendant's "statements were (1) false, (2) defamatory, and (3) of or concerning [the] plaintiff[]" to be actionable, Boyce & Isley,

17

<u>PLLC v. Cooper</u>, 568 S.E.2d 893, 897 (N.C. Ct. App. 2002), Gabriel

has neither specified any allegedly false statements on the part

of the Lender (or Trustee) Defendants nor alleged any statement

that appears to malign or otherwise defame him.  As a result, he

fails to state a claim for defamation or for any type of emotional

distress.[13]

### 3. Trustee Defendants' Motion to Dismiss

Most of Gabriel's claims against the Trustee Defendants are

identical to his claims against the Lender Defendants, and they

will be dismissed for the same reasons.  The only unique accusation

the court can make out against any of the Trustee Defendants is

Gabriel's argument in his response brief that Mandulak personally

"formulated, directed, controlled, or participated in the scheme

and practices of Defendant Deputy Clerk Holley Robinson."[14]  (Doc.

---

[13] Perhaps in recognition of the shortcomings of his claims against the
Lender Defendants, Gabriel's proposed amended complaint (Doc. 19) drops
those claims altogether.

[14] It is unclear whether Gabriel means to make out a freestanding claim
based on the allegation that Mandulak "violated his oath to practice
law." (Doc. 15 at 4.)  To the extent that Gabriel intended to bring a
legal malpractice claim against Mandulak, such a claim fails because
under North Carolina law "claims for relief for attorney malpractice are
actions sounding in contract and may properly be brought only by those
who are in privity of contract with such attorneys by virtue of a contract
providing for their employment." <u>Chicago Title Ins. Co. v. Holt</u>, 244
S.E.2d 177, 180 (N.C. Ct. App. 1978).  Mandulak never represented
Gabriel.  To the extent Gabriel intended instead to bring an analogue
tort claim for "the negligent breach of a common law duty of care flowing
from the parties' working relationship" identified in <u>United Leasing
Corp. v. Miller</u>, 263 S.E.2d 313, 317 (N.C. Ct. App. 1980), he has alleged
no "working relationship" with Mandulak that would give rise to such a
duty of care.  <u>See</u> <u>Chase Dev. Grp. v. Fisher, Clinard & Cornwell PLLC</u>,
710 S.E.2d 218, 226 (N.C. Ct. App. 2011) (explaining that <u>Miller</u>'s

18

15 at 4.)  Although phrases of this sort are generally used to make a claim of individual liability for corporate acts, see, e.g., F.T.C. v. Holiday Enters., Inc., No. 1:06-CV-2939-CAP, 2008 WL 953358 (N.D. Ga. Feb. 5, 2008) (discussing allegations that individual defendants "formulated, directed, controlled, or participated in the acts and practices of the Corporate Defendants"), Gabriel's claim is not made in that context. Instead, the court construes his claim as one for civil conspiracy — or, more accurately under North Carolina law, a "claim for damages resulting from a conspiracy." Fox v. Wilson, 354 S.E.2d 737, 743 (N.C. Ct. App. 1987); see Reid v. Holden, 88 S.E.2d 125, 130 (N.C. 1955) ("Accurately speaking, there is no such thing as a civil action for conspiracy.  The action is for damages caused by acts committed pursuant to a formed conspiracy, rather than by the conspiracy itself; and unless something is actually done by one or more of the conspirators which results in damage, no civil action lies against anyone.").  However, Gabriel's single bare assertion that Mandulak "formulated, directed, controlled, or participated in" a scheme with Robinson is insufficient to make a plausible claim that Mandulak and Robinson had "an agreement . . . to do an unlawful act or to do a lawful act in an unlawful way" or

_____

holding was predicated on the fact that the "express purpose" of the attorney's action had been "to induce plaintiff" to enter a transaction, and that the transaction had been "directly intended to affect plaintiff").

that they injured Gabriel "pursuant to a common scheme," as required under North Carolina law.  Piraino Bros., LLC v. Atl. Fin. Grp., Inc., 712 S.E.2d 328, 333 (N.C. Ct. App. 2011); see Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) ("[L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes.").[15]

For these reasons, the Trustee Defendants' motion to dismiss will be granted.

### 4. State Defendants' Motion to Dismiss and Gabriel's Motion for Extension of Time to Serve

The State Defendants argue that Gabriel's claims against them should be dismissed on a variety of bases, including for improper service.  In response, Gabriel moves for an extension of time to serve, and the State Defendants have not opposed the motion.

Federal Rule of Civil Procedure 4(c) places the burden on the plaintiff to effect proper service.  "Dismissal of an action against a defendant under Rule 12(b)(5) for insufficiency of service is within the discretion of the court" and will not necessarily be granted where there is no prejudice to the defendant and proper service is likely to be accomplished.  Argot v. Harden,

---

[15] To the extent scattered references to "Defendants['] deceptive actions in concert with the clerk" (Doc. 1 at 4) could be construed as making out conspiracy claims against all Defendants, these claims are similarly conclusory, see (Doc. 15 at 2 (admitting that "[t]he Plaintiff does not know who exacted the scheme" but speculating, without basis, that it is "highly unlikely [Robinson] acted alone")), and are denied.

No. 4:11-2755-MBS-TER, 2012 WL 6839310, at *5 (D.S.C. Sept. 27, 2012).  Further, "[w]hen there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process." Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984). Nevertheless, "the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." Id.

Here, Gabriel plainly failed to properly serve the State Defendants in their official capacities.  Official-capacity claims are treated as claims against the government entity of which the officer is an agent.  See Kentucky v. Graham, 473 U.S. 159, 166 (1985).  A state or state-created governmental organization must be served by "delivering a copy of the summons and of the complaint to its chief executive officer" or "serving a copy of each in the manner prescribed by that state's law."  Fed. R. Civ. P. 4(j)(2). Under North Carolina law, a state official may be served by personally delivering, mailing via registered or certified mail, or depositing with a designated delivery service a copy of the summons and complaint addressed to the state-designated process agent.  N.C. Gen. Stat. § 1A-1, Rule 4(j)(4).  If the state agency fails to designate a process agent, the agency may be served on the state Attorney General or a deputy or assistant attorney general.  Id.

Gabriel does not allege service on the State Defendants in any of these ways; instead, he appears to have attempted service on the State Defendants personally (Docs. 21, 21-2) and on the Forsyth County Attorney (Doc. 22). But "[s]ervice of process is not freestyle, and courts are directed not to overlook procedural deficiencies just because actual notice occurred." Shaver v. Cooleemee Volunteer Fire Dep't, No. 1:07cv00175, 2008 WL 942560, at *2 (M.D.N.C. Apr. 7, 2008); see also Land v. Food Lion, LLC, No. 3:12-cv-00006-GCM, 2012 WL 1669678, at *3 (W.D.N.C. May 14, 2012).

Gabriel also failed to properly serve Robinson as to his personal-capacity claims against her. In a sworn "affidavit of non-service," Gabriel's process server — Patricia A. Mitchell — states that she "attempted service" on Robinson personally but that Robinson "would not accept" it. (Doc. 21-2.) "When a person refuses to accept service, service may be effected by leaving the papers at a location, such as on a table or on the floor, near that person." Novak v. World Bank, 703 F.2d 1305, 1310 n.14 (D.C. Cir. 1983); see also Fed. Fin. Co. v. Longiotti, 164 F.R.D. 419, 421–22 (E.D.N.C. 1996) (finding service sufficient when private investigator attempted to serve the defendant at his residence by giving the documents to the defendant's wife, but — upon the wife's knowing refusal to accept service — left the documents on the doorstep); 4A Charles Alan Wright et al., Federal Practice and

Procedure § 1095 n.8 (4th ed. 2018) (collecting cases). However, Gabriel's process server does not report leaving the service documents with Robinson or anywhere else (Doc. 21-2), and Gabriel admits in his motion for extension of time to serve that he "ha[s] not yet served the defendants" (Doc. 31 at 2).

Nevertheless, pro se plaintiffs are often allowed "a chance to remedy technical insufficiencies in service of process." Thomas v. Nelms, No. 1:09-CV-491, 2013 WL 593419, at *1 (M.D.N.C. Feb. 14, 2013). The provision of additional opportunities to serve are at the court's discretion when the plaintiff has not shown good cause for the failure to serve,[16] see Fed. R. Civ. P. 4(m), and are not always granted — for instance, where the plaintiff has already been granted extensions of time to serve. See, e.g., Spinks v. Cohen, 1:17-cv-875, 2018 WL 6416511, at *1 (M.D.N.C. Dec. 6, 2018) ("While pro se plaintiffs are often allowed 'a chance to remedy technical insufficiencies in service of process,' [the plaintiff] has already been given that chance." (quoting Thomas, 2013 WL 593419, at *1)); Crespo v. Ocwen Loan Servicing, LLC, 1:16-cv-43, 2018 WL 1221862, at *4 (W.D.N.C. Jan. 23, 2018). Here, Gabriel has not previously sought or been granted an additional opportunity to serve. Moreover, the State Defendants failed to respond to his

---

[16] Gabriel's only excuse for improper service appears to be that the State Defendants "refused to sign wavier [sic] of service." (Doc. 31 at 2.) This does not constitute good cause.

motion for additional time to serve, making it an uncontested motion.  See Local Rule 7.3(k) ("If a respondent fails to file a response within the time required by this rule, the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice.").

As a result, the court will grant Gabriel 30 days from the date of this order in which to effect proper service; the court will deny the State Defendants' motion to dismiss without prejudice to its later consideration.  If Gabriel fails to properly serve the State Defendants within the 30-day period, his claims against the State Defendants (and, as a result, the remainder of this action) will be dismissed without further notice.  Otherwise, the State Defendants may either move to dismiss or — to avoid duplication of effort — simply file a notice that they wish to rest on their current briefing, depending on the circumstances. Upon the filing of either, Gabriel will have the typical 21 days to file a response,[17] and the State Defendants will have 14 days to file a reply.  See Local Rule 7.3(f), (h).

### B.  Gabriel's Motion to Amend

Gabriel also moves to amend his complaint to drop his claims against all Defendants other than Robinson and Mandulak and to add

---

[17] If Gabriel chooses to effect proper service and continue with the case, he should be prepared to explain why his claims should survive the bases for dismissal already referenced in the State Defendants' briefing, including Rooker-Feldman, the Eleventh Amendment, and judicial immunity.

claims against those two. (Docs. 18, 19.) The Lender and Trustee Defendants oppose the motion on grounds of futility.[18] (Doc. 23.)

Local Rule 15.1 requires that an amended complaint be attached to the motion to amend. Here, Gabriel has merely incorporated a list of new counts into his "Memorandum in Support of Plaintiff's First Motion for Leave to Amend and Supplement Complaint" (Doc. 19), making it difficult for the court to determine which parts of the document are intended to comprise the proposed new complaint, as opposed to being mere briefing in support of the motion for leave to amend. Confusion of this sort is one of the results the local rule is intended to prevent, and the Fourth Circuit has held that a motion to amend may be denied on this basis alone. See U.S. ex rel. Rostholder v. Omnicare, Inc., 745 F.3d 694, 703 (4th Cir. 2014) (finding that a plaintiff's "failure to comply" with a local rule "requir[ing] that a plaintiff attach to a motion to amend 'the proposed amended pleading' . . . justified the district court's denial of leave to amend"). As a result, Gabriel's motion will be denied on this basis. However, in consideration of Gabriel's pro se status, and because the court can readily determine that the new counts Gabriel lists in his motion are fatally flawed, the motion to amend will also be denied on the

---

[18] While the State Defendants did not respond to Gabriel's motion to amend, they briefly argue against Gabriel's proposed new claims in their motion to dismiss the complaint. (Doc. 28 at 8-9.)

merits.

Federal Rule of Civil Procedure 15 governs leave to amend, and provides that leave should be "freely" granted "when justice so requires."[19] Fed. R. Civ. P. 15(a)(2). Although this rule is a "liberal" one, leave will nevertheless be denied "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc) (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)). "Futility is apparent if the proposed amended complaint fails to state a claim . . . ." Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011).

None of the fourteen counts Gabriel proposes states a claim. Counts 2 (fraud on the court, deprivation of rights, and unauthorized practice of law),[20] 5 (fraud on the court "by obstruction," 18 U.S.C. § 1503), 6 (mail fraud, 18 U.S.C. § 1341),

---

[19] Gabriel's proposed amendment did not occur within 21 days after service of the original complaint or 21 days after the Lender Defendants' Rule 12(b) motion. Thus, absent Defendants' written consent, Gabriel may only amend with the court's leave. Fed. R. Civ. P. 15(a).

[20] Count 2 against Robinson does not cite to a criminal statute, but it is presented as bringing a claim against her for the "unauthorized practice of law without a license." (Doc. 19 at 4.) Although there may be "statutory criminal penalties for engaging in the unauthorized practice of law," In re Medley, No. 05-12299, 2005 WL 3093392, at *2 (Bankr. M.D.N.C. 2005), Gabriel does not explain how Robinson's alleged unauthorized practice of law amounts to the deprivation of a federal right or privilege secured to him and actionable in a civil suit under 42 U.S.C. § 1983.

and 7 (subornation of perjury, 18 U.S.C. § 1622) against Robinson and counts 3 ("aid and abet fraud constructive by judicial misconduct"),[21] 4 (obstruction, 18 U.S.C. § 1503), 6 (mail fraud, 18 U.S.C. § 1341), and 7 (subornation of perjury, 18 U.S.C. § 1622) against Mandulak allege violations of various criminal statutes. "[I]t is beyond the Court's purview in this civil matter to provide relief under criminal statutes." Fontell v. Hassett, 870 F. Supp. 2d 395, 414 (D. Md. 2012) (citing United States v. Batchelder, 442 U.S. 114, 124 (1979)).    Counts 1 ("perjury and official misconduct"), 3 ("judicial misconduct and perjury"), and 4 ("fraud[u]lent foreclosure") against Robinson and counts 2 ("trustee misconduct") and 5 (action for neglect, 42 U.S.C. § 1986) against Mandulak are "claim[s] seeking redress for an injury caused by the state-court decision itself" and would require that this court review the foreclosure proceedings for error. Davani v. Va. Dep't of Transp., 434 F.3d 712, 719 (4th Cir. 2006).    These claims are therefore outside of this court's subject matter jurisdiction pursuant to the Rooker-Feldman doctrine, as discussed earlier.

---

[21] Count 3 against Mandulak does not cite to a criminal statute, but it is presented as bringing a claim against him for "aiding and abetting" Robinson's misconduct and revolves around the four elements apparently necessary for convicting a criminal defendant under an "aiding and abetting" theory. See Department of Justice, 2474. Elements of Aiding and Abetting, Criminal Resource Manual, https://www.justice.gov/jm/criminal-resource-manual-2474-elements-aiding-and-abetting (last visited Jan. 7, 2019).    To the extent Gabriel may have meant this to be a civil conspiracy claim, such a claim would fail for the same reasons his conspiracy claims in the original complaint failed.

See id. (also noting that it is immaterial for Rooker-Feldman purposes whether or not the claim at issue was "asserted to the state court"); Broadnax, 2017 WL 4220456, at *3.  Count 1 ("Conspiracy to commit Fraud Upon the Court") against Mandulak, finally, is identical to Gabriel's conspiracy claim in the original complaint, and would fail for the same reasons.  As a result, Gabriel's amended complaint would fail to state any viable claims, and his motion to amend is denied on that basis as well.

## III. CONCLUSION

For the reasons set forth above, therefore,

IT IS ORDERED that the motions to dismiss by the Lender Defendants (Doc. 4) and the Trustee Defendants (Doc. 6) are GRANTED, and Gabriel's claims against these Defendants are DISMISSED WITH PREJUDICE except for those claims over which the court lacks subject-matter jurisdiction pursuant to Rooker-Feldman doctrine, which are DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Gabriel's motion for extension of time to serve (Doc. 31) is GRANTED and Gabriel shall have 30 days from the date of this order within which to serve the State Defendants, the State Defendants' motion to dismiss (Doc. 27) is DENIED WITHOUT PREJUDICE to its later consideration, and Gabriel's motion to amend (Doc. 18) is DENIED.

                              /s/    Thomas D. Schroeder
                              United States District Judge
January 8, 2019